# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| LORRAINE M. VANDEWALKER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:13CV1126 |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Lorraine M. Vandewalker, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). (Docket Entry 2.) The Court has before it the certified administrative record (cited herein as "Tr. __"), as well as the parties' cross-motions for judgment (Docket Entries 12, 14). For the reasons that follow, the Court should enter judgment for Defendant.

### I. PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI on May 13 and May 17, 2009, respectively, alleging a disability onset date of January 13, 2009. (Tr. 175-81, 182-89.) Upon denial of those applications initially (Tr. 63-70, 71-78, 95-99) and on reconsideration (Tr. 79-86, 87-94, 105-11, 112-20), Plaintiff requested a hearing de novo

before an Administrative Law Judge ("ALJ") (Tr. 121-23). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 36-62.) By decision dated September 5, 2012, the ALJ determined that Plaintiff did not qualify as disabled under the Act. (Tr. 20-31.) On October 16, 2013, the Appeals Council denied Plaintiff's request for review (Tr. 1-4), making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [Plaintiff] meets the insured status requirements of the [] Act through March 31, 2014.
>
> 2. [Plaintiff] has not engaged in substantial gainful activity since January 13, 2009, the alleged onset date.
>
> 3. [Plaintiff] has the following severe impairments: calcaneal spurs on bilateral feet; lumbago; sciatica; and obesity.
>
> . . . .
>
> 4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.
>
> . . . .
>
> 5. . . . [Plaintiff] has the residual functional capacity to perform medium work . . . except for after 30 minutes on her feet, she can sit and rest for two minutes or work while seated. After 30 minutes of sitting, [Plaintiff] has an opportunity to take a stretch break at her workstations. She can frequently push and/or pull with the bilateral lower extremit[i]es.
>
> . . . .

> 6. [Plaintiff] is capable of performing past relevant work as a fast food services manager. This work does not require the performance of work-related activities precluded by [Plaintiff's] residual functional capacity.
>
> . . . .
>
> In the alternative, considering [Plaintiff's] age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that [Plaintiff] also can perform.
>
> . . . .
>
> 7. [Plaintiff] has not been under a disability, as defined in the [] Act, from January 13, 2009, through the date of this decision.

(Tr. 25-31 (internal parenthetical citations omitted).)

## II. DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the Court's] review of [such a] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). In this case, Plaintiff has not shown entitlement to relief under the extremely limited review standard.

### A. Standard of Review

"[C]ourts are not to try [a Social Security] case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, the Court "must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal

3

standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based

4

upon a correct application of the relevant law." <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," <u>Hall v. Harris</u>, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" <u>Id.</u> (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration has . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." <u>Id.</u> "These regulations establish a 'sequential evaluation process' to determine whether a claimant is disabled." <u>Id.</u> (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' *i.e.*, currently working; and (2) must have a

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. [SSI] . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." <u>Craig</u>, 76 F.3d at 589 n.1 (internal citations omitted).

5

'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform [the claimant's] past work or (5) any other work." Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, the "claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, *i.e.*, "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [Commissioner] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's

6

whether, based on that RFC, the claimant can perform past relevant work; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Commissioner cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

### B.  Assignments of Error

Plaintiff contends that the Court should overturn the ALJ's finding of no disability on these grounds:

---

"ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can establish disability via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

7

1) the ALJ's finding that Plaintiff "can stand and walk for thirty minutes, and can sit for thirty minutes . . . [is] not supported by substantial evidence" (Docket Entry 13 at 3);

(2) because "[t]he ALJ found that [Plaintiff's] pain testimony was credible, . . . the ALJ's finding that [Plaintiff] can do the medium work described in the RFC finding is not based on substantial evidence" (id. at 4);

(3) substantial evidence fails to support the ALJ's categorizing of Plaintiff's past relevant work as a "fast food services manager" (id. at 5); and

(4) "[t]he ALJ erred by finding that [Plaintiff's] obesity did not affect her RFC" (id. at 8).

Defendant contends otherwise and seeks affirmance of the ALJ's decision. (Docket Entry 15 at 4-13.)

**1. RFC**

In Plaintiff's first and second issues on review, she challenges the ALJ's RFC determination and resulting hypothetical questions to the VE. (Docket Entry 13 at 3-5.) More specifically, Plaintiff deems this case "extremely rare," because the ALJ found that Plaintiff gave credible pain testimony and thus that she prevailed at both parts one and two of the subjective complaints of pain analysis set forth by the regulations and Craig, 76 F.3d at 594-95. (Docket Entry 13 at 2 (citing Tr. 29).) Given that the ALJ found Plaintiff credible, Plaintiff asserts the ALJ erred by

8

not incorporating into the RFC and hypothetical questions Plaintiff's testimony that she can stand and sit for only 20 minutes at a time and that she cannot lift 50 pounds. (See id. at 3-5 (citing Tr. 44, 54).) Plaintiff's argument on these points falls short.

Plaintiff's contentions fail, because she selectively chose language from the ALJ's decision appearing to find Plaintiff's pain testimony credible, while glossing over or ignoring other credibility statements by the ALJ which do not permit the conclusion that the ALJ found Plaintiff's pain testimony fully credible. Plaintiff relies on the ALJ's statements that he "found [Plaintiff's] testimony regarding her pain and limitations to be credible and accommodated those limitations in the [RFC]" (Tr. 29), and that, "[a]fter a careful review of the medical evidence and [Plaintiff's] testimony, [he has] found [Plaintiff's] allegations generally credible, but her limitations do not rise to a disabling level under the regulations" (Tr. 28 (emphasis added)). (Docket Entry 13 at 4-5.) First, the ALJ's statement that he found Plaintiff "generally credible" but did not find her limitations "disabling" (Tr. 28 (emphasis added)) does not support the notion that the ALJ found Plaintiff fully credible. Further, Plaintiff does not mention the ALJ's finding that Plaintiff's medically determinable impairments "could reasonably be expected to cause the alleged symptoms" (part one of the Craig analysis), but that

9

Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are <u>not credible to the extent they are inconsistent with the [RFC]</u> (part two of the <u>Craig</u> analysis)." (Tr. 27 (emphasis added).)

The United States Court of Appeals for the Fourth Circuit recently decided <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015), which found erroneous an ALJ's reliance on the "boilerplate" language, used here by the ALJ, that "'the claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not credible to the extent they are inconsistent with the above [RFC] assessment,'" <u>id.</u> at 639.[5] However, the court concluded that the ALJ's use of such language would nevertheless constitute harmless error if the ALJ had "properly analyzed credibility elsewhere." <u>Id.</u>

Here, the ALJ's use of the boilerplate language found improper by <u>Mascio</u> remains harmless error for two reasons. First, as described above, the ALJ did not restrict his assessment of Plaintiff's credibility to the language condemned by <u>Mascio</u>. Although the ALJ's varying ways of describing his assessment of Plaintiff's credibility do not constitute a model of clarity, such descriptions, read together, show that the ALJ found Plaintiff's symptom reporting only partially credible.

---

[5] The Fourth Circuit joined the Seventh Circuit in holding that this language "'gets things backwards' by implying 'that ability to work is determined first and is then used to determine the claimant's credibility.'" <u>Mascio</u>, 780 F.3d at 639 (quoting <u>Bjornson v. Astrue</u>, 671 F.3d 640, 645 (7th Cir. 2012)).

Second, the ALJ otherwise supported his credibility analysis with substantial evidence. For example, to support the ALJ's finding that Plaintiff could stand or walk for 30 minutes without a break, he relied on Plaintiff's testimony that she could walk about three miles. (See Tr. 28; see also Tr. 43 (containing Plaintiff's testimony that she could walk three miles).) Moreover, no medical source of record restricted Plaintiff to less than 30 minutes of standing and walking, and both state agency consultants found her capable of standing and walking for up to six hours in an eight-hour workday without breaks beyond those typically allowed in a work setting. (See Tr. 76, 84; see also Tr. 28 (ALJ's discussion of opinion evidence).)

Moreover, Plaintiff's portrayal of her hearing testimony regarding her ability to stand and walk (see Docket Entry 13 at 3-4) does not provide the full picture of her statements in that regard. As argued by the Commissioner, Plaintiff gave "ambiguous and inconsistent hearing testimony" regarding her ability to stand (or remain on her feet generally). (Docket Entry 15 at 8.) Plaintiff's conflicting statements included that she "couldn't stand for like an hour or two" (Tr. 42), that she could "walk close to three miles" (Tr. 43), and that she could stand next to the stove and cook "say about less than 30 minutes sometimes" (Tr. 44). Compounding that inconsistency, Plaintiff changed her testimony

11

regarding her ability to stand and walk after suggestive prompting by her counsel:

> COUNSEL: . . . [W]hen you just told [the] judge you clean your house, is it something that you can get up and just do all day, or do you have to take breaks?
>
> PLAINTIFF: I have to take breaks.
>
> COUNSEL: How often do you take a break?
>
> PLAINTIFF: I take about mostly all day, <u>about 20 minutes</u>. <u>Each few hours, I have to take a break</u>. I can't do it for long periods of time.
>
> COUNSEL: Okay, do you take a 20 minute break, or do you take a break about every 20 minutes?
>
> PLAINTIFF: <u>Like every 20 minutes, usually</u>.
>
> COUNSEL: Okay, so you can work for 15, 20 minutes, then you take a break?
>
> PLAINTIFF: Yes.

(Tr. 46-47 (emphasis added).) Thus, the ALJ's decision to find Plaintiff capable of remaining on her feet for 30 minutes before resting or sitting down (Tr. 26) constitutes a reasonable middle ground between the extremes of Plaintiff's widely divergent testimony.

Plaintiff additionally challenges the ALJ's finding that, "[a]fter 30 minutes of sitting, [Plaintiff would need] an opportunity to take a stretch break at her workstation" (id.). (See Docket Entry 13 at 4.) According to Plaintiff, she "misspoke" when she testified that she "can sit [at her computer] for <u>at least</u> 20

12

minutes, and I have to get up and move a little bit" (Tr. 44 (emphasis added)), because "her statement makes sense only if 'at least' means 'at most'" (Docket Entry 13 at 4). Contrary to Plaintiff's argument, the context of her testimony does not establish that she meant "at most 20 minutes" rather than "at least 20 minutes." The full question and answer at issue read as follows:

> ALJ: What about sitting? Do you have any problems just sitting?
>
> PLAINTIFF: Sitting is the hardest. I sit in front of the computer sometimes. I have to look up things or I do things on the computer, and I can sit there for at least 20 minutes, and I have to get up and move a little bit.

(Tr. 44.) Nothing about this exchange compels the Court to conclude that Plaintiff actually meant "at most."

Moreover, the ALJ supported his finding regarding Plaintiff's ability to sit with the observation that, "[a]lthough the hearing was only a snapshot, [Plaintiff] sat for about 30 minutes in no apparent distress." (Tr. 29.) Further, no medical source in the record restricted Plaintiff to 20 minutes of sitting at one time, and both state agency consultants found that Plaintiff could sit for six hours in an eight-hour workday without the need for breaks beyond those typically permitted in a work setting. (See Tr. 76, 84; see also Tr. 28 (ALJ's discussion of opinion evidence).)

13

With regards to her exertional level, Plaintiff disputes the ALJ's finding that Plaintiff can perform medium work, i.e., lift and carry up to 50 pounds occasionally, see 20 C.F.R. §§ 404.1567(c), 416.967(c). (Docket Entry 13 at 4-5.) Plaintiff contends that the ALJ should have credited her testimony that her prior work as a "shift runner" for a pizza delivery chain required her, at times, to lift 50 pounds, and that she could no longer lift that much weight. (Id. (citing Tr. 54.).)

As detailed above, the ALJ found Plaintiff's testimony only partially credible (see Tr. 27, 28) and further supported his finding regarding Plaintiff's exertional capability by noting her testimony that she did not have much weakness in her upper extremities (see Tr. 28; see also Tr. 44 (reflecting Plaintiff's testimony regarding upper extremity weakness). Additionally, as discussed by the ALJ, both state agency consultants found Plaintiff capable of lifting 50 pounds (medium exertion). (See Tr. 28; see also Tr. 76, 84.)

In sum, substantial evidence supports the ALJ's RFC determination. By extension, the ALJ did not err in omitting Plaintiff's claimed limitations from the hypothetical questions to the VE. Fisher v. Barnhart, 181 F. App'x 359, 364 (4th Cir. 2006) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s] a[n] [RFC] for which the ALJ had sufficient evidence.'" (quoting Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005))).

14

**2. Past Relevant Work**

Next, Plaintiff asserts that the ALJ erred by finding that Plaintiff could perform her PRW as a fast food services manager, "because [Plaintiff] never held such a job." (Docket Entry 13 at 6 (citing Tr. 29).) Plaintiff maintains that the VE concluded that her prior work "was an amalgam of two jobs: fast food [services] manager (light [exertion]) and fast food cook (medium [exertion])" (id. (citing Tr. 55)), and that she can no longer lift 50 pounds as required by medium work (id. (citing Tr. 54)). Thus, Plaintiff argues that "she cannot return to [her shift runner] job as [she actually] performed [it,] [a]nd since the job does not exist in the DOT [Dictionary of Occupational Titles]," no possibility exists that she could return to such a job as generally performed. (Id. at 7 (emphasis omitted).) According to Plaintiff, "PRW consists of a claimant's entire past 'position,' [and] not every single one of the past job's constituent parts." (Id. at 8 (emphasis omitted).) Although Plaintiff's contentions regarding her PRW have merit, the ALJ's error remains harmless where Plaintiff has not challenged the ALJ's alternative step five finding that other jobs exist in significant numbers in the national economy that Plaintiff can perform (Tr. 29-31). (See Docket Entry 13 at 3-9.)

The United States Court of Appeals for the Ninth Circuit addressed an analogous situation in Carmickle v. Commissioner, Soc. Sec. Admin., 533 F.3d 1155 (9th Cir. 2008). The court found error

15

in the ALJ's determination at step four and held, in pertinent part, as follows:

> The DOT is "the best source for how a job is generally performed." Pinto v. Massanari, 249 F.3d 840, 845 (9th Cir. 2001). In classifying prior work, the agency must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation "according to the least demanding function." Valencia v. Heckler, 751 F.2d 1082, 1086 (9th Cir. 1985). Here, the ALJ did just that. Only 20 percent of [the plaintiff's] duties as a construction supervisor involved supervision. The remainder of his time was spent performing manual labor. Yet the VE's classification, which the ALJ accepted, was a purely supervisory position.

Carmickle, 533 F.3d at 1166.

Similarly, in this case, Plaintiff indicated that the supervisory aspects of her shift runner job took up about 25% of her work time, with the remainder of her time involving the tasks of unloading trucks, taking customers' orders, and preparing pizzas. (Tr. 203.) Under the persuasive authority of Carmickle, the ALJ erred by relying upon the VE's categorization of Plaintiff's prior work as "fast food services manager," where that job captured only the non-predominant, supervisory aspects of Plaintiff's shift runner job.[6]

---

[6] Some cases hold that a claimant's failure to challenge the VE's classification of the claimant's prior work can result in waiver of the ability to raise such an issue on judicial review. See, e.g., Wegner v. Colvin, No. EDCV 13-0634-JPR, 2014 WL 1430955, at *10 (C.D. Cal. Apr. 14, 2014) (unpublished) ("[T]he ALJ's reliance on the VE's testimony was reasonable, especially in light of Plaintiff's failure at the hearing to object to the VE's categorization of his past work, question the VE about her opinion regarding Plaintiff's past relevant work, or even point out the contradictory state-agency decision guide.") (citing Solorzano v. Astrue, No. EDCV 11-369-PJW, 2012 WL 84527, at *6 (C.D. Cal. 2012) (unpublished)). Here, Plaintiff failed to challenge at the hearing the VE's classification of Plaintiff's prior work as a combination of "fast food services

Nevertheless, Plaintiff has failed to challenge the ALJ's alternative step five finding that other jobs exist in significant numbers in the national economy that Plaintiff can perform (Tr. 29-31). (See Docket Entry 13 at 3-9.) Accordingly, "[a]lthough the ALJ's step four determination constitutes error, it is harmless error in light of the ALJ's alternative finding at step five." Tommasetti v. Astrue, 533 F.3d 1035, 1042 (9th Cir. 2008); accord Bradberry v. Colvin, No. 5:12-CV-190-D, 2012 WL 4776530, at *9 (E.D.N.C. Sept. 6, 2013) (unpublished).

Accordingly, the Court should reject Plaintiff's assignment of error regarding PRW.

**3. Obesity**

Finally, Plaintiff claims that, given the ALJ's finding that Plaintiff's obesity constituted a severe impairment at step two (see Tr. 25), the ALJ erred by failing "to explain how [Plaintiff's] obesity affected her ability to work, or how it factored into her RFC" (Docket Entry 13 at 8-9). According to Plaintiff, "it is scarcely conceivable that [her] pain from standing and walking — pain caused in part by her heel spurs — is not aggravated by the additional pressure exerted by her excess weight." (Id. at 9.) Plaintiff's argument on this point provides no basis for relief.

---

manager" and "fast food cook." (Tr. 54-55, 58-60.) The Court need not address this issue, however, given the harmlessness of the ALJ's step four error.

17

Contrary to Plaintiff's assertions, the ALJ did explain his finding that Plaintiff's obesity neither constituted a disabling impairment nor "preclude[d] [her from] performing a reduced range of medium exertion [work]." (Tr. 28.) First, the ALJ properly noted in his decision that he "fully considered SSR 02-1p [<u>Titles II and XVI: Evaluation of Obesity</u>, 2002 WL 34686281, at *4-6 (Sept. 12, 2002)]," which requires ALJs to consider a claimant's obesity at all stages of the SEP. (Tr. 26.) The ALJ went on to explain:

> The record establishes that [Plaintiff] was obese. Her weight ranged from 198 to 211 pounds. At a height of 62 inches, her body mass index ranged from 36 to 38. However, [Plaintiff's] testimony and reports reflected that she was able to cook, help with household chores, shop, and help care for her grandson. She was encouraged by her primary care physician to lose weight, and her weight decreased from 210 to 198 from August 2011 to March 2012. Moreover, examinations showed that her range of motion was generally normal. Therefore, the record did not show that [Plaintiff's] weight was itself disabling or that it aggravated her other impairments to preclude performing a reduced range of medium exertion [work].

(Tr. 28 (citing Tr. 206-13, 243-75).) This explanation identifies substantial evidence that supports the ALJ's finding regarding Plaintiff's obesity.

In addition, no medical provider of record has opined that Plaintiff's obesity reduces her capacity to work below the medium level of exertion, and both state agency consultants found that Plaintiff, despite her obesity, retained the ability to perform medium work. (<u>See</u> Tr. 76, 84.) Moreover, Plaintiff has not argued

how her obesity should result in greater limitations than those reflected in her RFC. (See Docket Entry 13 at 8-9.)

Under these circumstances, Plaintiff's final assignment of error fails as a matter of law.

### III. CONCLUSION

Plaintiff has failed to establish grounds for relief.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, that Plaintiff's Motion for Judgment on the Pleadings (Docket Entry 12) be denied, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 14) be granted, and that this action be dismissed with prejudice.

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

August 5, 2015